UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

June 15, 2023

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:     *Nicole C. v. Kijakazi, Acting Commissioner, Social Security Administration*
        Civil No. 1:22-cv-02123-JMC

Dear Counsel:

On August 23, 2022, Nicole C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision denying her claims for a Period of Disability ("PD") and Disability Insurance Benefits ("DIB"). (ECF No. 1). I have considered the record in this case (ECF No. 11), and I have considered the parties' dispositive filings (ECF Nos. 14, 16, & 17).[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). The Court must uphold an agency's decision if the decision is supported by substantial evidence and was reached through an application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Defendant's Motion and remand the case for further proceedings. I provide my rationale below.

Plaintiff filed a claim for PD and DIB on June 18, 2020, alleging disability beginning July 15, 2017. (Tr. 20).[2] Plaintiff's claim was denied initially on September 15, 2020, and again denied upon reconsideration on November 9, 2021. *Id.* Thereafter, Plaintiff filed a written request for a hearing. *Id.* On March 17, 2022, Administrative Law Judge ("ALJ") Leisha Self held an online video hearing. *Id.* Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 17–38). On June 7, 2022, the Appeals Council declined review and, consequently, the ALJ's decision constitutes the final, reviewable decision of the SSA. (Tr. 6–8).

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." In the case *sub judice*, Plaintiff filed a brief. (ECF No. 14). Although Defendant's filing is docketed as a brief, it is written as a motion for summary judgment. (ECF No. 16). As such, the Court will refer to Defendant's filing as a motion for summary judgment.

[2] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 11) that Defendant filed in this case. When citing specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

In the instant case, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since July 15, 2017, the alleged onset date . . . ." (Tr. 23). The ALJ further found that during the relevant time frame, Plaintiff suffered from the severe impairments of "obesity, lumbar spine degenerative disc disease and scoliosis, anxiety, depression, adjustment disorder, and post-traumatic stress disorder . . . ." *Id.* Despite these impairments, the ALJ determined that Plaintiff retained the RFC to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant needs to avoid concentrated exposure to vibration and hazards, such as unprotected heights and dangerous machinery. The claimant is limited to understanding, remember and applying simple and routine instructions and attending and concentrating for extending periods with simple and routine tasks at work that is not at production rate pace (meaning no strict production requirements or rapid assembly line work where co-workers are side by side and the work of one affects the work of others). There can be occasional interaction with the general public, coworkers, and supervisors. She can also make simple, work-related decisions and have few changes in the routine work setting.

(Tr. 30).

The ALJ determined that Plaintiff was unable to perform past relevant work. (Tr. 36). However, after considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy. (Tr. 37). Specifically, the ALJ found that Plaintiff was able to perform work as a final assembler

2

(DOT[3] #713.687-018), a table worker (DOT #739.687-182), and a lens inserter (DOT #713.687-026).  *Id.*  Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame.  (Tr. 38).

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards.  *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance."  *Id.* (other citation and internal quotation marks omitted).  In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ."  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ."  *Id.*  "However, the Court does not reflexively rubber-stamp an ALJ's findings."  *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021) (quoting *Lewis*, 858 F.3d at 870) (internal quotation marks omitted).

On appeal, Plaintiff presents two arguments: (1) "[t]he ALJ's residual functional capacity . . . determination is unsupported by substantial evidence[,]" and (2) "[t]he ALJ materially erred by failing to acknowledge and consider the underlying evidence supporting Plaintiff's 100% disability rating from the Department of Veterans Affairs (VA)."  (ECF No. 14 at pp. 8–21).[4]  Specifically, regarding Plaintiff's first argument, Plaintiff contends that the ALJ erred by not performing a function-by-function analysis of Plaintiff's alleged sitting limitations, thus apparently arriving to the improper conclusion that Plaintiff was not restricted in her ability to sit.  (ECF No. 14 at pp. 12–13).  For the reasons discussed below, I find that the ALJ's decision is unsupported by substantial evidence thereby precluding meaningful review.  Therefore, I will deny Defendant's Motion for Summary Judgment (ECF No. 16), and remand the case.

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles.  The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)."  *Pearson v. Colvin*, 810 F.3d 204, 211, n. 1 (4th Cir. 2015).

[4] When citing to specific page numbers in ECF documents—other than the official transcript—the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

## ANALYSIS

1. ***The ALJ Failed to Properly Perform a Function-By-Function Analysis.***

Regarding Plaintiff's first argument, the ALJ did not properly perform a function-by-function analysis of all the functions relevant to sedentary work while assessing Plaintiff's RFC. Social Security regulations require an ALJ to "identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Mascio*, 780 F.3d at 636. "[A] proper RFC analysis proceeds in the following order: (1) evidence, (2) logical explanation, and (3) conclusion." *Dowling*, 986 F.3d at 388 (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)) (internal quotation marks omitted). To satisfy the function-by-function analysis requirement, the ALJ must include a "narrative discussion of [the] claimant's symptoms and medical source opinions[]" to support the RFC determination. *White v. Comm'r, Soc. Sec. Admin.*, No. SAG–16–2428, 2017 WL 1373236, at *1 (D. Md. Apr. 13, 2017) (other citation and internal quotation marks omitted). In doing so, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Petry v. Comm'r, Soc. Sec. Admin.*, CV SAG-16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000)). Without a proper narrative discussion, "it is impossible for the Court to determine whether the decision was based on substantial evidence." *Stacy C. v. Kijakazi*, No. CBD-20-2833, 2022 WL 814292, at *3 (D. Md. Mar. 17, 2022) (other citations omitted). "[W]here an ALJ finds multiple RFC limitations, each one must be accompanied by a narrative discussion with a separate analysis citing specific evidence that explains how it supports each of the ALJ's conclusions." *Jeffrey B. v. Saul*, No. GLS 20-1090, 2021 WL 797920, at *3 (D. Md. Mar. 2, 2021) (citing *Dowling*, 986 F.3d at 3; SSR 96-8p, 1996 WL 374184, at *7 (S.S.A.)). In sum, a function-by-function assessment must include a narrative discussion that explains how certain evidence supports Plaintiff's work-related abilities and limitations.

Like the claimant in *Mascio*, Plaintiff depends on "Social Security Ruling 96-8p, which explains how adjudicators should assess residual functional capacity." *Mascio*, 780 F.3d at 636 (other citation omitted). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." *Id.* (citing SSR 96-8p, 61 Fed. Reg. 34, 474, 34, 475 (July 2, 1996)). Thus, if relevant or contested, the following functions are required to be considered by an ALJ during the RFC analysis: "*sitting*, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), [that] may reduce [claimant's] ability to do past work and other work." 20 C.F.R. § 404.1545(b) (emphasis added). Only after conducting the required function-by-function assessment can the RFC be expressed through physical exertional requirements of work.[5] *Mascio*, 780 F.3d at 636. "To

---

[5] Of course, it is common practice for an ALJ to provide their RFC conclusion at the beginning of her analysis in the form of an introductory subtitle. However, the conclusion in such an introductory subtitle must necessarily be reached only after proceeding through the process of providing a proper RFC analysis, as outlined above.

4

determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567.

Here, the ALJ found that Plaintiff can participate in jobs that are classified as sedentary. Turning to the physical exertion requirements of work relevant to the case *sub judice*, 20 C.F.R. § 404.1567(a) defines sedentary work:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Based on Plaintiff's contentions and the evidence in the record, it is clear that Plaintiff's ability to sit is particularly relevant to a proper RFC analysis regarding Plaintiff's ability to perform sedentary work. However, the ALJ failed to perform a proper function-by-function analysis of the functions relevant to sedentary work, specifically in regard to Plaintiff's heavily contested sitting limitations. Thus, in assessing Plaintiff's first contention, this Court finds two aspects of the ALJ's RFC analysis particularly troubling: (1) the ALJ's RFC analysis conforms more closely to an evaluation of Plaintiff's symptoms rather than Plaintiff's functional capacities, and consequently, (2) the ALJ's RFC analysis fails to adequately assess and provide a conclusion on the extent of Plaintiff's sitting abilities.

First, rather than perform the requisite function-by-function analysis, the ALJ diligently evaluated Plaintiff's symptoms, and the ALJ permitted this evaluation to guide her RFC determination. *See Henderson v. Kjakazi*, No. CV AAQ-20-3346, 2022 WL 1555408, at *2 (D. Md. May 17, 2022). "Of course, a claimant's symptoms, and the extent to which the alleged severity of those symptoms is supported by the record, is relevant to the RFC evaluation." *Dowling*, 986 F.3d at 379. "But an RFC assessment is a separate and distinct inquiry from a symptom evaluation . . . ." *Id.* Like the ALJ's decision in *Henderson*, wherein the ALJ failed to conduct the proper function-by-function assessment, the ALJ's decision in this case contains language clearly indicating the implementation of a symptom-based analysis. (Tr. 30) ("Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."); (Tr. 31) ("the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in

5

this decision.").[6] While this symptom-based assessment allowed the ALJ to ostensibly reach a conclusion regarding some of the functions under 20 C.F.R. § 404.1545(b), such as stooping and crouching, the ALJ failed to conduct a proper function-by-function analysis of these functions and others (specifically, the sitting function) listed in 20 C.F.R. § 404.1545. *Henderson*, 2022 WL 1555408, at *2 ("In carrying out a symptom evaluation in this manner, the ALJ was able to reach a conclusion regarding some of the functions under 20 C.F.R. § 416.945, such as stooping and crouching, but did not conduct a complete assessment of these functions as required by a proper function-by-function analysis, or any analysis of several other functions listed in the applicable regulation.")[7] (other citation omitted).

Second, the ALJ prematurely concluded that Plaintiff could perform sedentary work without narratively discussing the extent that Plaintiff can sit. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Berryhill*, 858 F.3d at 869 (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *see also Taylor v. Astrue*, No. CIV. A. BPG-11-0032, 2012 WL 294532 at *6 (D. Md. Jan. 31, 2012) (holding that the ALJ's lack of discussion regarding claimant's sitting functions was not an error because the ALJ provided "a full narrative of his consideration of the evidence on file, specifically taking note of *all* the evidence presented by [claimant] with regard to her exertional limitations and explaining why that evidence was not compelling.") (emphasis added). Unlike the ALJ in *Taylor*, the ALJ in this case failed to specifically take note of the evidence, including treatment records and testimony of the Plaintiff, that point to the conclusion that Plaintiff is significantly limited in her ability to sit. For example, one treatment record noted that "[Plaintiff] describes the pain as a constant throbbing, achy, and sometimes deep stabbing pain especially with standing, sitting and lying flat on her back." (ECF No. 11-9 at p. 345). Another treatment record indicated that "[Plaintiff] is unable to maintain 1 position for extended periods of time which impacts sitting and standing." (ECF. No. 11-10 at p. 294). Additionally, Plaintiff stated that she is not able to sit for more than five minutes before needing to stand up or change positions." (ECF No. 11-3 at p. 87). If the ALJ found that Plaintiff was unable to sit for a prolonged period of time, Plaintiff "likely would have been deemed incapable of performing sedentary work." *Dowling*, 986 F.3d at 389. Thus, because the parties disagree over the extent that Plaintiff can sit, the ALJ's assessment of Plaintiff's ability to sit becomes "critically relevant to determining her disability status . . . ." *Id.* By precluding a discussion of evidence that supports a finding that Plaintiff is impaired in her ability to sit, it is unclear how the ALJ arrived at an opposite conclusion. *Id.* at 388 ("the ALJ apparently concluded that Appellant was not restricted in her ability to sit, as she did not indicate that her RFC was

---

[6] Nearly identical language in *Henderson* led this Court to conclude that the ALJ conducted a purely symptom-based assessment to the exclusion of the requisite function-by-function assessment. *See Henderson*, 2022 WL 1555408, at *3 ("The ALJ was explicit, on multiple occasions, that she was conducting a symptom-based analysis and not a function-by-function analysis."); *id.* ("Once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."); *id.* ("the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.").

[7] For clarity, the functions listed in 20 C.F.R. § 404.1545(b) are the same functions listed in 20 C.F.R. § 416.945(b), which *Henderson* cites. Thus, the ALJ here made the same error as the ALJ in *Henderson* in failing to assess all of the relevant functions listed in the regulations.

limited because of those problems. This conclusion should have been accompanied by 'a narrative discussion describing' the evidence supporting it.") (quoting *Thomas*, 916 F.3d at 311)). Therefore, a proper narrative discussion, including a discussion of evidence that lends support to Plaintiff's alleged impairment, should have accompanied the ALJ's conclusion regarding the sitting function.

The ALJ failed to perform a proper function-by-function analysis regarding Plaintiff's ability to perform the work functions relevant to sedentary work. Therefore, the Court cannot conclude that substantial evidence supports the ALJ's final determination. Accordingly, the Court shall remand the case.[8] *See Nancy G. v. Kijakazi*, No. GLS 20-3440, 2022 WL 363824, at *3 (D. Md. Feb. 4, 2022) (holding that where the ALJ used a symptom evaluation approach in reaching its RFC determination, the case had to be remanded for lack of substantial evidence to support a decision).

### 2. *The ALJ Failed to Adequately Consider All of The Medical Evidence Underlying The VA's 100% Disability Determination.*

Although the ALJ's failure to perform a proper function-by-function analysis regarding Plaintiff's ability to perform work-related functions relevant to sedentary work warrants remand, the Court wishes to address Plaintiff's second argument, as well. Specifically, Plaintiff asserts that "the ALJ materially erred by failing to acknowledge and consider the underlying evidence supporting Plaintiff's 100% disability rating from the . . . VA[.]" (ECF No. 14 at p. 14).

Regarding Plaintiff's second argument, the Court finds that the ALJ failed to adequately consider all of the medical evidence underlying the VA's 100% disability determination. The Fourth Circuit recently held that its prior precedent requiring an ALJ to "consider and thus also discuss the VA's determination that [claimant] is 100% disabled" is superseded by new SSA rules that no longer require the ALJ "to consider — much less discuss or accord any weight to — the VA's disability determination" for claims filed on or after March 27, 2017. *Rogers v. Kijakazi*, 62 F.4th 872, 878 (4th Cir. 2023); *see also* 20 C.F.R. § 404.1504. However, pursuant to the new rule, the ALJ must still "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [the SSA] receive[s] as evidence in [the] claim in accordance with § 404.1513(a)(1) through (4)." Thus, the ALJ should still consider all of the evidence that supports the VA's findings.

Particularly, where the VA's evidence is obviously important to an ALJ's analysis, it should be apparent that the ALJ considered such evidence. *Rogers*, 62 F.4th at 881 ("Of course, to the extent that the VA's disability determination relied on the menstrual cycle evidence, the new SSA rules required the SSA ALJ to consider that evidence. In any event, the ALJ was compelled

---

[8] The Court acknowledges that ALJ's are not "required to use particular language or adhere to a particular format in conducting [their] analysis so long as the decision, read as a whole, demonstrates that the ALJ considered the appropriate factors in reaching a conclusion . . . ." *Finley v. Astrue*, No. 5:08-CV-209-D(1), 2009 WL 2489264, at *10 (E.D.N.C. Aug. 13, 2009). However, on remand, the ALJ should be mindful of the Court's negative perspective in *Dowling* of the ALJ's failure therein to "cite to 20 C.F.R. § 416.945, the section of the Code of Federal Regulations that is titled 'Your residual functional capacity' . . . or SSR 96-8p, . . . the Social Security Ruling that provides guidance on how to properly evaluate an RFC." *Dowling*, 986 F.3d at 387.

by Social Security Ruling No. 96-8p to consider the menstrual cycle evidence, as it obviously is relevant to [claimant's] ability to do sustained work-related activities on a regular and continuing basis.") (other citations omitted).  Here, the ALJ gave some consideration to the VA's underlying evidence for its determination. (Tr. 31) ("The claimant's Veteran's Affairs records documented a long history of scoliosis and chronic low back pain with radiation down her right side dating back to July 2017, and an MRI of the lumbar spine showed a moderate broad-based disc bulge at L5-S1.").  Additionally, the ALJ cited to the VA's medical records to guide its analysis (providing several citations to Exhibits 3F, 18F, 5F, and 21F).  Importantly, however, the ALJ evidently failed to consider that Plaintiff suffers from a neurogenic bladder disorder—which accounts for the largest percentage of Plaintiff's VA disability rating—nor did the ALJ make any mention of how this dysfunction may impact Plaintiff's workday.  Like in *Rogers*, this evidence is clearly substantial and should have been considered.[9]  Without any mention of it, this Court cannot determine if the ALJ considered it in accordance with § 404.1513(a)(1) through (4).  In any event, because such evidence is clearly relevant to Plaintiff's "ability to do sustained [sedentary] work-related activities on a regular and continuing basis[,]" the evidence should have been considered pursuant to SSR 96-8p. *Rogers*, 62 F.4th at 881.

## CONCLUSION

In sum, the Court agrees with Plaintiff that the ALJ failed to perform the proper function-by-function assessment regarding the function of sitting, which clearly is relevant to the ALJ's finding that Plaintiff can perform sedentary work.  Additionally, the ALJ did not properly consider all of the relevant medical evidence underlying the VA's disability determination.  Because of these failures, the Court cannot conclude that substantial evidence supports the ALJ's final determination.  Therefore, the Court must remand the case. *See Henderson*, 2022 WL 1555408; *see also Nancy G. v. Kijakazi*, No. GLS 20-3440, 2022 WL 363824, at *3 (D. Md. Feb. 4, 2022) (holding that where the ALJ used a symptom evaluation approach in reaching a RFC determination, the case had to be remanded for lack of substantial evidence to support such a decision); *see also Dowling*, 986 F.3d at 389 (holding that where the ALJ does not consider significant underlying evidence used in the VA's disability assessment, the case has to be remanded for further analysis of such evidence).

Accordingly, for the reasons set forth herein, Defendant's Motion for Summary Judgment (ECF No. 16) is DENIED.  The SSA's judgment is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g).  Despite the informal nature of this letter, it is an Order of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge

---

[9] Had the Court considered only the ALJ's decision, the Court would be unaware of Plaintiff's neurogenic bladder or the accompanying history of bladder infections, pelvic organ prolapse of the bladder, chronic pelvic pain, urinary frequency, frequent painful urination, impairment of sphincter control, daytime voiding interval between two and three hours, and requiring the wearing of absorbent materials which must be changed more than four times per day. (ECF No. 17 at p. 5).